UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ENGLEY DIVERSIFIED, INC., d/b/a GOTCHA COVERED MEDIA,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>CITY OF PORT ORCHARD, et al.,<br><br>　　　　　　Respondents. | CASE NO. C11-5874BHS<br><br>ORDER REVERSING DECISION |

This matter comes before the Court on Petitioner Engley Diversified, Inc.'s ("Engley") petition to reverse Respondent City of Port Orchard's ("the City") City Council's ("the City Council") decision regarding the vesting of its permit applications. Dkt. 54. The Court has considered the pleadings filed in support of and in opposition to the petition and the remainder of the file and hereby reverses the City Council's decision for the reasons stated herein.

**I. PROCEDURAL AND FACTUAL HISTORY**

This case arises out of Engley Diversified, Inc.'s ("Engley") filing of permit applications with the City to construct billboards on properties owned by others. The

ORDER - 1

applications, filed in March and April of 2010, were denied by the City, and the denial was affirmed by the City's Hearing Examiner ("the Hearing Examiner") on November 9, 2010. AR 669-680. On December 6, 2010, the Hearing Examiner denied Engley's motion for reconsideration. AR 699-702. On December 16, 2010, Engley filed an appeal of the Hearing Examiner's decision to the City Council. AR 783-88. On March 22, 2011, the City Council dismissed the appeal as untimely. AR 900-06.

On April 11, 2011, Engley filed an action challenging the City Council's denial of his appeal in Kitsap County Superior Court, which was removed to this Court on April 26, 2011. *See* C11-5324BHS. On July 7, 2011, the Court concluded that Engley had timely filed an appeal of the Hearing Examiner's denial of its permit applications and ordered the case remanded to the City Council to hear its appeal. Dkt. 45 in C11-5324BHS.

On September 13, 2011, the City Council held a hearing to consider the issue remanded from this Court. AR 907. On September 27, 2011, the City Council issued its ruling reversing the Hearing Examiner's determinations that (1) billboards were prohibited as off-premises signs; and (2) Engley's permit applications had vested. AR 909-21.

On October 17, 2011, Engley filed a second suit in Kitsap County Superior Court challenging the City Council's decision following remand. Dkt. 1 at 7-16. On October 24, 2011, the City removed the action to this Court. Dkt. 1 at 1-2.

On February 10, 2012, the Court issued an order granting in part and denying in part the City's motion for partial summary judgment (Dkt. 29) and on April 10, 2012, the

1  Court issued an order granting in part and denying in part the City's motion for
2  reconsideration on the order (Dkt. 39). The Court then scheduled a LUPA hearing for
3  August 24, 2012. On August 2, 2012, the Court denied the City's motion to supplement
4  the administrative record in LUPA appeal. Dkt. 61.
5        On August 24, 2012, the Court held a LUPA hearing on Engley's petition. Dkt.
6  62.

## II. DISCUSSION

8        Engley seeks to reverse the City Council's final land use decision in which the
9  City found that Engley's "construction permit applications" should never have been
10 denied, but found that such construction permit applications, although "complete" under
11 RCW 36.70B.070(4), do not vest under RCW 19.27.095(1) and that Engley still needs to
12 submit separate "building permit applications." *See* Dkt. 54 (citing Admin. Record
13 ("AR") 909-21). The City maintains that the City Council's decision should be upheld
14 and, at oral argument, cited *Lauer v. Pierce County*, 173 Wn. 2d 242, 252 (2011), to
15 support its contention that while Engley's permit applications may have been "complete"
16 under RCW 36.70B.070, they did not vest under RCW 19.27.095(1) because Engley
17 failed to complete applications for building permits.

18 **A.**   **LUPA**

19       Washington's Land Use Protection Act, RCW 36.70C ("LUPA"), provides a
20 statutory standard for judicial review of land use decisions. LUPA defines "land use
21 decisions" as "a final determination by a local jurisdiction's body or officer with the
22 highest level of authority to make the determination, including those with authority to

hear appeals" on land use decisions. RCW 36.70C.020. Under LUPA, the party seeking relief carries the burden of establishing one of six statutorily enumerated standards, which include: "(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise" and "(d) The land use decision is a clearly erroneous application of the law to the facts." RCW 36.70C.130(1). "Whether a decision involves an erroneous interpretation of the law under standard (b) is a question of law that courts review de novo." *Lauer*, 173 Wn. 2d at 252. "[U]nder standard (d), a decision is clearly erroneous if, 'although there is evidence to support it, the reviewing court on the record is left with the definite and firm conviction that a mistake has been committed.'" *Id*. at 253 (quoting *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 829 (2011)).

**B.      Vesting**

In Washington, developers are entitled to the benefit of "the regulations in effect at the time a complete building permit application is filed, regardless of subsequent changes in zoning or other land use regulations." *Abbey Rd. Grp., LLC v. City of Bonney Lake*, 167 Wn. 2d 242, 250 (2009). The relevant vesting statute provides in pertinent part:

> (1) A valid and fully complete building permit application for a structure, that is permitted under the zoning or other land use control ordinances in effect on the date of the application shall be considered under the building permit ordinance in effect at the time of application, and the zoning or other land use control ordinances in effect on the date of application.
> (2) The requirements for a fully completed application shall be defined by local ordinance . . . .

1   RCW 19.27.095(1)-(2).  "The common law required only that an application be
2   'sufficiently complete,' while the legislature decided that the application must be 'fully
3   complete.'"  *Lauer*, 173 Wn.2d at 259 (comparing RCW 19.27.095(1) with *Valley View*
4   *Indus. Park v. City of Redmond*, 107 Wn. 2d 621, 638 (1987)).  The legislature also
5   "made the definition of a 'fully completed application' contingent upon local law." *Id*.
6   (citing RCW 19.27.095(2)).

7          Under RCW 36.70B.070, "a project permit application will be deemed complete
8   'if the local government does not provide a written determination to the applicant that the
9   application is incomplete' within 28 days of receipt." *Lauer*, 173 Wn.2d at 261 (quoting
10  RCW 36.70B.070(1), (4)(a)).  However, as the Washington Supreme Court established in
11  *Lauer*, completeness under RCW 36.70B.070 does not meant that a permit is "fully
12  complete" for purposes of vesting under RCW 19.27.095.  *Id*.  "RCW 19.27.095(a) also
13  requires that a building permit application be 'valid' and 'permitted under the zoning or
14  other land use control ordinances in effect on the date of the application' in order to vest
15  under the law at the date of the application." *Id*. at 261-62.  Here, there is no question
16  that Engley's permit application was a use permitted under the local ordinances in effect
17  on the date of his application, as the City Council held in its review of the Hearing
18  Examiner's decision.  AR 918-20.  However, the court in *Lauer* also held that a permit
19  application must be "valid" as in "legally sufficient" or "meritorious" and without
20  "knowing misrepresentations of material fact."  The City argues that Engley's
21  *construction* permit applications, as the City characterizes them, were not legally
22  sufficient to entitle Engley to a vested *building* permit application because construction

permits are not entitled to vesting and because Engley's application was missing information and therefore was not "fully complete" for purposes of vesting under RCW 19.27.095.

Therefore, the issue before the Court is whether the City Council's ruling that Engley only applied for construction permits, failed to file for building permits, and therefore does not have a fully complete application that is subject to the vested rights statute was clearly erroneous.

**C.  Construction Permits vs. Building Permits**

The City maintains that the City Council's ruling should be affirmed because, as the City Council states in its decision, Engley failed to apply for building permits and his construction permit applications are not subject to the vesting statute. Engley maintains that he applied for building permits and that his application was "fully complete" for purposes of vesting under RCW 19.27.095.

In March and April of 2010, Engley submitted eight applications to the City to construct billboards. The following language was included in a cover letter that was submitted with six of the applications:

> Enclosed please find 6 written *building permit* applications for the erection of (6) back to back double sided, single pole billboards.  The billboards are being submitted following POMC 16.65 titled the 'Sign Code.'  More specifically chapter section 16.65.110 titled 'Commercial, mixed use, and employment district signs.'  This section specifically directs to POMC 16.65.170 titled Billboards.  This is a separate provision governing Billboards.

AR 27 (emphasis added). Engley submitted forms titled "Construction Permit Application" and included sketches, site plans, engineered drawings from a professional

engineer, and structural calculations for the proposed billboards.  AR 130-158, 159-187, 188-216, 217-225, 226-235, 236-264 & 265-291.   For at least four of the permit applications, the City charged Engley two fees, a $50.00 fee that was written on the line next to "Building Permit Fee," and a $4.50 fee that was written on the line next to "Surcharges."  AR 131, 160, 218 & 227.  For three of the "Construction Permit Application[s]" a number was written on the line next to "BLDG Permit #."  AR 131 (#10 00136), 160 (#10 00137) & 266 (10 00163).[1]

In a letter dated March 31, 2010, the City notified Engley that he needed to submit paperwork indicating he had permission to file for the applications on behalf of the property owners.  AR 25.  In a letter dated April 7, 2010, the City denied Engley's applications and included the following language:

> Please Note: the submitted application is lacking additional site and building specification information that would be required for approve [sic] of such a structure at this site, if this application were allowed by Port Orchard Municipal Code.  At this time, the allowance of the proposed Billboard Sign providing general advertising is not supported within the current sign code within the City limits.

AR 54.  On April 16, 2010, Engley appealed the denial.  AR 358.

On June 22, 2010, the City adopted Ordinance No. 011-10, which prohibited billboards within the City, and on June 23, 2010, the City filed a motion to dismiss the

---

[1] The second page of three of the Construction Permit Applications (AR 189, 218 & 227) do not have a number written on the line next to "BLDG Permit #" but the subsequent pages of the applications (AR 190, 219 & 228) contain the numbers 10 00138, 10 00139, and 10 00141, respectively.  In addition, the second page of the Construction Permit Application that begins at AR 236 is missing from the record, although the first page of the application contains the number 10 00162.

appeal as moot based on the ordinance.  *See* AR 507.  On September 23, 2010, the Hearing Examiner denied the motion holding that the permit applications were "complete" under RCW 36.70B.070 and that the applications vested under RCW 19.27.095 prior to the effective date of Ordinance No. 011-10.  AR 505-16.  Specifically, the Hearing Examiner rejected the City's argument that Engley's sign permits are treated differently than building permits and states in his decision that

> the sign permit applications submitted to the City in this matter are for structures as described in the State Building Code, and are referred to in the applications as building permit applications.  Although the City's March 31 letter of incompleteness references six *sign* applications, none of the City exhibits indicate that it notified the Applicant that a building permit would also be required.  The request for approval of these sign permit applications is similar to a request for approval of building permit applications.  Thus, the applications qualify for vesting under RCW 19.27.095 upon a determination that a complete application has been filed.

AR 515-16 (internal citations and footnote omitted) (emphasis in original).  The Hearing Examiner then concluded that five applications were complete on April 19, 2010, two applications were complete on May 6, 2010, and the final application was complete on May 13, 2010 and such applications "therefore vested prior to the adoption of Ordinance No. 011-10."  AR 516.

The Court concludes that the Hearing Examiner properly found that the request for sign permits instead of building permits, on these facts, is a distinction without a difference such that Engley's permit application was subject to vesting under RCW 19.27.095.  The City has failed to show that it treated Engley's permit application differently, in any meaningfully way, than it would have a building permit.  As the Court states above, along with the permit applications Engley submitted sketches, site plans,

1  engineered drawings from a professional engineer, and structural calculations for the

2  proposed billboards, as was required by the City's code for building a structure.  AR 130-

3  158, 159-187, 188-216, 217-225, 226-235, 236-264 & 265-291.  In addition, the City

4  charged Engley a $4.50 fee under the Building Code for at least four of the permits (AR

5  131, 160, 218 & 227) and has failed to explain why such a fee would be charged,

6  including when asked by the Court at oral argument, if Engley's applications were being

7  characterized as sign or construction permits only.  Although the City argues that Engley

8  would have to submit further information and forms to apply for a building permit, they

9  have failed to state what forms and information are missing from Engley's original

10 permit application.  Accordingly, because the Court concludes that Engley submitted

11 fully complete building permit applications for purposes of vesting under RCW

12 19.27.095, the Court also concludes that the City Council's decision to the contrary was

13 erroneous and that Engley's applications vested under the statute.

### III. ORDER

Therefore, it is hereby **ORDERED** that the City Council's decision is **REVERSED**.

Dated this 12th day of September, 2012.

BENJAMIN H. SETTLE
United States District Judge