1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ENGLEY DIVERSIFIED, INC. d/b/a GOTCHA COVERED MEDIA,

                    Petitioner/Plaintiff,

        v.

CITY OF PORT ORCHARD, et al.,

                    Respondents/Defendants.

CASE NO. C11-5874 BHS

ORDER DENYING PETITIONER/PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Respondent/Defendant City of Port Orchard's ("City") and Petitioner/Plaintiff Engley Diversified, Inc.'s ("Engley") motions for summary judgment (Dkt. 85, 87). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL HISTORY

**A.      Prior Action**

On April 11, 2011, Engley filed a land use petition and complaint for damages against the City and others in Kitsap Superior Court for the State of Washington.  C11-

ORDER - 1

1 5324BHS, Dkt. 1, Exh A ("*Engley I*").  In the petition, Engley challenged numerous

2 issues including whether the City Council correctly determined that Engley's appeal of

3 the local hearing examiner's decision was timely.  *Id.*  In the complaint, Engley sought

4 damages under RCW Chapter 64.40 and 42 U.S.C. § 1983.  *Id.*

5    On July 7, 2011, the Court concluded that Engley's appeal was timely and that the

6 City Council should have considered the merits of Engley's appeal.  *Id.*, Dkt. 45.  The

7 Court remanded the matter for further consideration, entered judgment, and closed the

8 case.  *Id.*

9 **B.    Instant Action**

10    On October 17, 2011, Engley filed another land use petition and complaint against

11 the City and others in the Kitsap County Superior Court for the State of Washington.

12 Dkt. 1-1 ("*Engley II*").  In the petition, Engley sought review of a decision under the

13 Washington Land Use Petition Act ("LUPA"), RCW Chapter 36.70C.  *Id.*  In the

14 complaint, Engley sought damages under RCW Chapter 64.40 and 42 U.S.C. § 1983.  *Id.*

15    On October 24, 2011, the City removed the matter to this Court.  Dkt. 1.

16    On September 12, 2012, the Court granted Engley's petition to reverse the City

17 Council's "decision regarding the vesting of its permit applications."  Dkt. 63 at 1.

18    On January 26, 2016, the City filed a motion for summary judgment.  Dkt. 85.  On

19 January 27, 2016, Engley filed a motion for summary judgment on his claims for civil

20 rights violations and violations of RCW 64.40.020(1).  Dkt. 87.  Both parties responded.

21 Dkts. 89, 90.  Both parties replied.  Dkts. 91, 92.

22

## II. FACTUAL BACKGROUND

On March 25, 2010, Engley submitted six permit applications to the City for the erection of billboards on property owned by third parties.  Dkt. 86, Declaration of Patrick McMahon, Exh. A.[1]  On March 31, 2010, the City's Code Enforcement Officer, Katherine Woodside, informed Engley that the applications were incomplete.  *Id*.  On April 13, 2010, Ms. Woodside denied Engley's applications because the proposed general advertisement billboards were "not supported within the current sign code within the City limits."  *Id*., Exh. 2.  On April 16, 2010, Engley appealed the denial of his permits.  *Id*., Exh. 4.

On June 22, 2010, the City adopted Ordinance No. 011-10, which prohibited all billboards within the City limits.  On June 23, 2010, the City moved to dismiss Engley's appeal arguing that the amendments to the sign code rendered the issues moot.  On September 23, 2010, the Hearing Examiner issued an opinion denying the City's motion to dismiss because Engley's permits had vested before adoption of the ordinance.  *Id*., Exh. 7.

On November 9, 2010, the Hearing Examiner issued a decision denying Engley's appeal on the merits.  *Id*., Exh. 8.  The Hearing Examiner concluded that the City's interpretation of its code was not clearly erroneous and that Engley's constitutional arguments "need not be addressed."  *Id*.

---

[1] Engley cites to the Administrative Record ("AR") in its statement of facts.  The Court, however, no longer has the AR in its possession.  The Court assumes the record was destroyed after the September 12, 2012 decision.

1    On December 15, 2010, Engley appealed to the City Council. *Id*., Exh. 10.  On

2   March 22, 2011, the City Council issued a decision denying Engley's appeal as untimely.

3   *Id*., Exh. 11.  This Court overturned that decision in *Engley I* and remanded to consider

4   the merits of the appeal.

5    On September 27, 2011, the City Council adopted Resolution 033-11.  *Id*., Exh. 12

6   ("Resolution").  In that resolution, the City Council concluded that (1) the Hearing

7   Examiner erred in ruling that the permit applications were prohibited under the City code,

8   (2) Engley's permits were not vested, and (3) neither the City Council nor the Hearing

9   Examiner have authority to rule on constitutional issues.  *Id*.  On September 12, 2012, the

10   Court granted Engley's petition to reverse the City Council's "decision regarding the

11   vesting of its permit applications."  Dkt. 63 at 1.

12    In December 2012, the City granted Engley's permits.  Dkt. 88, Declaration of

13   William John Crittenden, ¶ 4.

14   **III. DISCUSSION**

15   **A.    Summary Judgment Standard**

16    Summary judgment is proper only if the pleadings, the discovery and disclosure

17   materials on file, and any affidavits show that there is no genuine issue as to any material

18   fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

19   The moving party is entitled to judgment as a matter of law when the nonmoving party

20   fails to make a sufficient showing on an essential element of a claim in the case on which

21   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

22   323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

1  could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

2  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

3  present specific, significant probative evidence, not simply "some metaphysical doubt").

4  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

5  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

6  jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

7  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

8  626, 630 (9th Cir. 1987).

9        The determination of the existence of a material fact is often a close question. The

10  Court must consider the substantive evidentiary burden that the nonmoving party must

11  meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

12  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

13  issues of controversy in favor of the nonmoving party only when the facts specifically

14  attested by that party contradict facts specifically attested by the moving party.  The

15  nonmoving party may not merely state that it will discredit the moving party's evidence

16  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

17  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

18  nonspecific statements in affidavits are not sufficient, and missing facts will not be

19  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

20  **B.    Collateral Estoppel**

21        In this case, the City argues that Engley's claims for damages are barred by the

22  doctrine of collateral estoppel.  Dkt. 85.  Collateral estoppel "prevents relitigation of an

1 | issue after the party estopped has had a full and fair opportunity to present its case." *Barr*

2 | *v. Day*, 124 Wn.2d 318, 324–25 (1994).

3 |  Four conditions must be met before the doctrine will be applied: (1)
   |  the issues in the two actions must be identical; (2) there must have been a
4 |  final judgment in the first action; (3) the party against whom the estoppel is
   |  being pleaded must have been a party or in privity with a party to the first
5 |  action; and (4) application of the doctrine cannot work an injustice on the
   |  party against whom it is pleaded.

6 | *Lutheran Day Care v. Snohomish Cty.*, 119 Wn.2d 91, 115 (1992)

7 |  The City contends that Engley is barred from bringing the damages claims in

8 | *Engley II* because they were presented in *Engley I*.  The City's argument is without merit.

9 | The City is correct that Engley has asserted nearly identical claims in both cases, but the

10 | City fails to recognize that Engley did not have a full and fair opportunity to present his

11 | damages claims in *Engley I*.  In that case, the Court reversed the City Council's decision

12 | on a procedural timing error, remanded for further consideration, and dismissed the

13 | remaining issues as moot.  The City has failed to show that those ruling have any

14 | preclusive affect on Engley's current claims for damages.  Therefore, the Court denies

15 | the City's motion on this issue.

16 | **C.    42 U.S.C. § 1983**

17 |  Section 1983 is a procedural device for enforcing constitutional provisions and

18 | federal statutes; the section does not create or afford substantive rights.  *Crumpton v.*

19 | *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  In order to state a claim under section 1983,

20 | a plaintiff must demonstrate that (l) the conduct complained of was committed by a

21 | person acting under color of state law and that (2) the conduct deprived a person of a

22 |

1 right, privilege, or immunity secured by the Constitution or by the laws of the United

2 States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by*

3 *Daniels v. Williams*, 474 U.S. 327 (1986).

4         The two issues with Engley's § 1983 claim are whether he has established

5 constitutional violations and whether he has established liability against the City.  The

6 Court will address the latter issue first.

7         **1.**      **Municipal Liability**

8         In this case, Engley contends that the City is responsible for certain constitutional

9 violations committed by its employees.  In *Monell v. Department of Social Servs.*, 436

10 U.S. 658 (1978), the Supreme Court held that municipalities are "persons" subject to

11 damages liability under section 1983 where "action pursuant to official municipal policy

12 of some nature cause[s] a constitutional tort."  *Id.* at 691.

13         A section 1983 plaintiff may establish municipal liability in one of
three ways. First, the plaintiff may prove that a city employee committed

14 the alleged constitutional violation pursuant to a formal governmental
policy or a longstanding practice or custom which constitutes the standard

15 operating procedure of the local governmental entity. Second, the plaintiff
may establish that the individual who committed the constitutional tort was

16 an official with final policy-making authority and that the challenged action
itself thus constituted an act of official governmental policy. Whether a

17 particular official has final policy-making authority is a question of state
law. Third, the plaintiff may prove that an official with final policy-making

18 authority ratified a subordinate's unconstitutional decision or action and the
basis for it.

19 
*Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotations and

20 
citations omitted).

21

22

1    The City moves for summary judgment arguing that Engley fails to establish

2  liability under *Monell*.  Dkt. 85 at 15–16.  The City contends that Engley has failed to

3  show (1) an official policy by (2) an official with final policy making authority.  Dkt. 85

4  at 15–16, Dkt. 90 at 4–5, Dkt. 92 at 5–6.  Although the City's briefing is conclusory and

5  unpersuasive, actual consideration of the relevant law supports its position.  With regard

6  to an official policy, the Supreme Court has held that actionable municipal policies

7  include not only "formal rules or understandings" but also individual decisions tailored to

8  address specific circumstances.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81

9  (1986).

10         A government frequently chooses a course of action tailored to a particular
           situation and not intended to control decisions in later situations. If the
11         decision to adopt that particular course of action is properly made by that
           government's authorized decisionmakers, it surely represents an act of
12         official government "policy" as that term is commonly understood.

13  *Id*. at 481.

14         [W]here a municipality's governing legislative body inflicts the
           constitutional injury, the municipal policy inquiry is essentially
15         superfluous: the city is liable under the statute whether its decision reflects
           a considered policy judgment or nothing more than the bare desire to inflict
16         harm.

17  *St. Louis v. Praprotnik*, 485 U.S. 112, 139 n. 3 (Brennan, J., concurring in judgment).

18  (1988).  "In other words, a 'policy' decision could be any decision, so long as it was

19  made by the right person."  *Lutheran Day Care*, 119 Wn.2d at 120.  The next issue is

20  who made the alleged unconstitutional decisions.

21         The City argues that Engley "fails to establish that any person acting on behalf of

22  the City was an official with final policymaking authority or that an official with final

1  policymaking authority ratified the unconstitutional decision."  Dkt. 92 at 6. With regard

2  to the former assertion, "[w]hether a particular official has final policy-making authority

3  is a question of state law." *Gillette*, 979 F.2d at 1346.  In rejecting an argument similar to

4  the City's current argument, the Washington Supreme Court stated as follows:

5      There is no question that the Snohomish County Council is the final policy-
       making body for Snohomish County. There is also no question that the
6      council has the power to establish county policy relative to land use, and
       more specifically, to the granting or denial of conditional use permits. Such
7      grant or denial is therefore an area within which the council could have
       established policy, even if its decision in this case does not meet the usual
8      definition of policy. Therefore, the county council's denial of the
       conditional use permit is the County's official policy for purposes of
9      establishing its liability under § 1983.

10  *Lutheran Day Care*, 119 Wn.2d at 123–24 (1992) (citing *Bateson v. Geisse*, 857 F.2d

11  1300, 1303 (9th Cir. 1988)).

12      Under state law, the City's conclusory argument that Engley fails to identify an

13  official with final policy-making authority is without merit.  Although in *Luthern Day*

14  *Care*, the relevant entity was a county council as opposed to a city council, this issue is

15  not raised by the City and is, at most, a distinction without a difference.  Thus, under

16  *Lutheran Day Care*, the Court concludes that the City Council has final policy-making

17  authority.  Engley's problem, however, is that he has failed to cite, and the Court is

18  unaware of, any authority for the proposition that the Hearing Examiner has final policy-

19  making authority.  At most, Engley has shown that the City Council delegated its policy-

20  making authority to the Hearing Examiner and/or the Code Enforcement Officer.  In light

21  of this framework, the Court must consider what decisions the City Council either made

22  or ratified.  *Gillette*, 979 F.2d at 1346 (liability if "individual who committed the

ORDER - 9

1  constitutional tort was an official with final policy-making authority" or "an official with

2  final policy-making authority ratified a subordinate's unconstitutional decision.").

3      **2.      Constitutional Violations**

4      Engley alleges that his First Amendment and due process rights were violated.

5  Engley's First Amendment argument is based on the decisions of the Code Enforcement

6  Officer and the Hearing Examiner.  In short, Engley asserts that preclusion of his

7  billboards based on a strained interpretation of the municipal code was an unreasonable

8  restriction on commercial speech in violation of *Desert Outdoor Advertising, Inc. v. City*

9  *of Moreno Valley*, 103 F.3d 814 (9th Cir. 1996), *cert. denied*, 522 U.S. 912 (1997).  The

10  City Council, however, vacated the substantive determination and interpretation of the

11  municipal code by adopting the Resolution.  Thus, Engley has failed to show an

12  unconstitutional policy or ratification of an unconstitutional policy by the final policy-

13  making authority, which is the City Council.   Although Engley attempts to fault the City

14  for the actions of the Code Enforcement Officer and the Hearing Examiner, it fails to

15  show that these officers were more than appointed authorities with delegated authority to

16  make certain discretionary decisions.  In such circumstances, the City is not liable even if

17  the appointed authority exercises his or her discretion in an unconstitutional manner.  For

18  example, in *Pembaur* the Supreme Court stated a similar hypothetical as follows:

19          [I]f [city] employment policy was set by the [Mayor and Aldermen
            and by the Civil Service Commission], only [those] bod[ies'] decisions
20          would provide a basis for [city] liability. This would be true even if the
            [Mayor and Aldermen and the Commission] left the [appointing
21          authorities] discretion to hire and fire employees and [they] exercised that
            discretion in an unconstitutional manner . . . .

22

1  475 U.S., at 483, n. 12. Therefore, the Court grants the City's motion on Engley's First

2  Amendment claim.

3  With regard to the due process claim, Engley alleges that he was denied

4  procedural due process because the City Council concluded that neither it nor the Hearing

5  Examiner have jurisdiction to address constitutional issues. Dkt. 87 at 13–17. Engley

6  has failed to cite any case that stands for the proposition that he is entitled to a local

7  administrative review process that considers constitutional challenges to the municipal

8  code. While such a limited quasi-judicial proceeding runs the risk of issuing decisions

9  that violate established constitutional rights, there is an absence of authority for the

10  proposition that all of an individual's rights must be addressed at every level of municipal

11  government. Therefore, the Court grants the City motion on Engley's due process claim.

12  **D.  RCW 64.40.020**

13  In Washington, owners of a property interest have a cause of action for an

14  agency's wrongful denial of a development permit:

15  Owners of a property interest who have filed an application for a
   permit have an action for damages to obtain relief from acts of an agency
16  which are arbitrary, capricious, unlawful, or exceed lawful authority, or
   relief from a failure to act within time limits established by law:
17  PROVIDED, That the action is unlawful or in excess of lawful authority
   only if the final decision of the agency was made with knowledge of its
18  unlawfulness or that it was in excess of lawful authority, or it should
   reasonably have been known to have been unlawful or in excess of lawful
19  authority.

20  RCW 64.40.020(1).

21  In this case, the parties dispute whether the City Council knew or should have

22  known that its final decision was unlawful. The City argues that questions of fact

1  preclude summary adjudication of this issue.  Dkt. 90 at 5–6.  While the City's showing

2  that questions of fact exist is suspect, Engley faces another burden as the moving party on

3  his own claim.  "[*W*]*here the moving party has the burden*—the plaintiff on a claim for

4  relief or the defendant on an affirmative defense— *his showing must be sufficient for the*

5  *court to hold that no reasonable trier of fact could find other than for the moving party*."

6  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation omitted); *see also*

7  *Southern Calif. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).  Engley

8  has failed to show that no reasonable juror could find other than the City Council knew or

9  should have known its actions were unlawful.  Therefore, the Court denies Engley's

10  motion on this issue.

11                                          **IV. ORDER**

12         Therefore, it is hereby **ORDERED** that the City's motion for summary judgment

13  (Dkt. 85) is **GRANTED in part** and **DENIED in part,** Engley's § 1983 claim is

14  dismissed, and Engley's motion for summary judgment (Dkt. 87) is **DENIED**.

15         Dated this 1st day of April, 2016.

16

17  _____

    BENJAMIN H. SETTLE
18  United States District Judge

19

20

21

22